# SUPREME COURT OF THE UNITED STATES

### JOHN KEVIN WOODWARD *v.* CALIFORNIA, ET AL.

#### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SIXTH APPELLATE DISTRICT

#### No. 24–227.   Decided February 24, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." "[A]ny ruling that the prosecution's proof is insufficient to establish criminal liability for an offense" is therefore "a bar to a subsequent prosecution for the same offense." *McElrath* v. *Georgia*, 601 U. S. 87, 94 (2024) (internal quotation marks omitted). This case raises an important question about whether California's approach to construing trial court dismissals under Cal. Penal Code Ann. §1385(a) (Cum. Supp. 2025) as acquittals comports with the Double Jeopardy Clause. I nevertheless concur in the Court's denial of certiorari today because the California Supreme Court should first address this question in light of this Court's more recent double jeopardy precedent.

## I

In 1992, California charged Kevin Woodward with the murder of Laurie Houts. At the time, Woodward lived with Houts's boyfriend, Brent Fulmer. In support of the murder charge, the State alleged that Woodward displayed possessive behavior toward his roommate and that he became jealous when Fulmer began spending time with Houts. The State's physical evidence tying Woodward to the crime included two latent fingerprints on the outside of Houts's car and fibers resembling Woodward's sweatpants, collected

from the rope used to strangle Houts.

The State tried Woodward twice for Houts's murder. Each time, a majority of jurors (8 of 12 in the first trial, and 7 of 12 in the second) voted to acquit. After discharging the second deadlocked jury in August 1996, the trial court dismissed in open court the murder charge pursuant to Cal. Penal Code Ann. §1385(a). That provision allows a trial judge, "of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice," to "order an action to be dismissed." App. to Pet. for Cert. 72a (quoting Cal. Penal Code Ann. §1385(a) (West 1996)).\* The minute order memorializing the hearing states that, "'[i]n open court at 9:49 [a.m.] with above-named counsel and defendant present,'" "'the court rea[d] the written decision into the record dismissing this case pursuant to Penal Code [s]ection 1385 based on insufficient evidence.'" *People* v. *Superior Ct. of Santa Clara Cty.*, 100 Cal. App. 5th 679, 688, 319 Cal. Rptr. 3d 488, 494 (2024) (alterations in original).

The trial court's written decision, filed that same day, recounted that "the prosecution has been given two opportunities to convict the defendant and serve the public interest," but "[b]oth trials have resulted in hung juries, with the majority of jurors voting for acquittal." App. to Pet. for Cert. 74a. The court observed, moreover, that "the vast majority of the evidence does not point to the defendant's guilt" and concluded that, "absent new evidence," the prosecution would be "unable" to meet its burden of proof "in subsequent trials." *Id.*, at 75a–76a. Dismissing the charge at this point would further the interests of justice, the court explained, because "[r]epeated prosecution would create a risk of conviction through sheer government perseverance" and "risk convicting an innocent citizen by wearing down the defendant through repeated trials while it perfects its

──────────

\*California Penal Code Ann. §1385(a) (Cum. Supp. 2025) has since been amended, but the quoted language remains the same.

case." *Id.*, at 76a (citing *Tibbs* v. *Florida*, 457 U. S. 31, 41–42 (1982)).

In the end, the court summarized its ruling as follows:

> "A dismissal of this case is not meant to criticize the work done by the prosecution or deprive the victim's family of an opportunity to see their daughter's killer brought to justice. There is simply a lack of evidence on which to convict the defendant. Without new evidence, the result of this case will be the same at each successive trial. Due to the lack of evidence in this case, a jury will never be able to reach a unanimous verdict of guilty. It appears that justice would best be served if the charges were dismissed." App. to Pet. for Cert. 76a–77a.

Twenty-six years later, the State filed another indictment against Woodward, alleging that newly tested DNA evidence supported a finding of Woodward's guilt. Woodward moved to dismiss, arguing that the 1996 dismissal functioned as an acquittal and that the Double Jeopardy Clause therefore barred his retrial.

The trial court agreed and dismissed the charge. The court recognized that, under the California Supreme Court's decision in *People* v. *Hatch*, 22 Cal. 4th 260, 991 P. 2d 165 (2000), "'Section 1385 dismissals should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard.'" App. to Pet. for Cert. 59a. The trial court reasoned that the earlier dismissal satisfied the requirements of *Hatch* because it was "due to the 'insufficiency of the evidence,'" and "'[i]nsufficient evidence' is a term of art" that, absent contrary indication, "'means the evidence was insufficient to support a conviction as a matter of law.'" *Id.*, at 61a. "Further," the court observed, "the trial court's written order repeatedly referred to the lack of evidence to convict" Woodward. *Id.*, at 65a.

The California Court of Appeal vacated the trial court's dismissal, reasoning that, under *Hatch*, a dismissal does not meet the standard for acquittal merely because it cites "'insufficiency of the evidence'" as the basis for dismissal. 100 Cal. App. 5th, at 704, 319 Cal. Rptr. 3d, at 507. Instead, the Court of Appeal held that *Hatch* requires courts to assume a dismissal is not an acquittal unless the dismissing court clearly applies the substantial evidence standard. *Ibid.* (citing *Hatch*, 22 Cal. 4th, at 273, 991 P. 2d, at 174). The dismissal here did not qualify, the Court of Appeal explained, because the record did not "'clearly indicate[]'" that the trial court had "conclude[d] the evidence was insufficient as a matter of law to support a conviction" or that it had "'viewed the evidence in the light most favorable to the prosecution.'" 100 Cal. App. 5th, at 704, 319 Cal. Rptr. 3d, at 508.

Justice Lie concurred to explain her concern that decisions of this Court "have eroded the analytical foundations of the rule announced in *Hatch*" and to urge the California Supreme Court to reexamine that rule's continuing vitality. *Id.,* at 710, 715, 319 Cal. Rptr. 3d, at 513, 517. In her view, the Court of Appeal's application of *Hatch* was "a determination that the trial court's dismissal[,] expressly based on the 'insufficiency of the evidence[,]' failed to conform to a state-law standard even though it is an acquittal as defined by the United States Supreme Court." 100 Cal. App. 5th, at 716, 319 Cal. Rptr. 3d, at 516. The California Supreme Court declined review. App. to Pet. for Cert. 1a.

## II

This Court has "defined an acquittal" for purposes of double jeopardy to include not only "'a ruling by the court that the evidence is insufficient to convict,'" but also a "'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g]

which relate[s] to the ultimate question of guilt or innocence.'" *Evans* v. *Michigan*, 568 U. S. 313, 318–319 (2013) (quoting *United States* v. *Scott*, 437 U. S. 82, 91, 98, and n. 11 (1978); alterations in original). "[W]hether an acquittal has occurred for purposes of the Double Jeopardy Clause is a question of federal, not state, law." *McElrath*, 601 U. S., at 96. Thus, state-law labels "'do not control'" the double jeopardy analysis, nor is it "dispositive whether a factfinder 'incanted the word "acquit."'" *Ibid.* (quoting *Evans*, 568 U. S., at 322, 325). Instead, "an acquittal has occurred if the factfinder 'acted on its view that the prosecution had failed to prove its case,'" regardless of how it characterizes that ruling. *McElrath,* 601 U. S., at 96 (quoting *Evans*, 568 U. S., at 325); see also *Smalis* v. *Pennsylvania*, 476 U. S. 140, 144, n. 5 (1986).

There is reason to think that California's *Hatch* rule, at least as applied in this case, conflicts with this Court's double jeopardy precedents. In the 1996 dismissal order, the trial court stated that the dismissal was "for insufficiency of the evidence" and that "[t]here is simply a lack of evidence on which to convict the defendant." App. to Pet. for Cert. 76a–77a. Yet, under *Hatch*, California courts apparently must assume that dismissals like this one are not acquittals unless the trial court makes unmistakably clear, in its order, that it has drawn all inferences in favor of the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt. See 22 Cal. 4th, at 273, 991 P. 2d, at 174. This Court has not defined an acquittal in this way. See *Evans*, 568 U. S., at 318–319.

Nor has this Court demanded, in evaluating whether a dismissal constituted an acquittal, proof that the acquitting court applied the sufficiency of the evidence standard by construing the evidence in the light most favorable to the prosecution. To the contrary, this Court has stated that the Double Jeopardy Clause "bars retrial following a court-de-

creed acquittal, even if the acquittal is 'based upon an egregiously erroneous foundation.'" *Id.*, at 318 (quoting *Fong Foo* v. *United States*, 369 U. S. 141, 143 (1962) (*per curiam*)).

The State defends *Hatch* as no more than the California Supreme Court's approach to "interpreting ambiguous Section 1385 dismissals," Brief in Opposition 18, emphasizing that "'the meaning attached to an ambiguous prior reversal is a matter of state law,'" *id.*, at 17–18 (quoting *Tibbs*, 457 U. S., at 47, n. 24). That may well be the case. There is a fine line, however, between a rule of judicial interpretation designed to help courts ascertain whether a dismissal relates to guilt or innocence and the state court's imposition of a different standard for acquittals under the Double Jeopardy Clause. The latter is impermissible: "[W]hether an acquittal has occurred for purposes of the Double Jeopardy Clause is a question of federal, not state, law." *McElrath*, 601 U. S., at 96. To the extent the California Supreme Court adopted a different standard in order to "properly balanc[e] the competing interests embodied in the constitutional prohibitions against double jeopardy," *Hatch*, 22 Cal. 4th, at 273, 991 P. 2d, at 174, it had no discretion to do so.

The Court of Appeal's application of *Hatch* to Woodward's 1996 dismissal order suggests that the *Hatch* rule is, at least as applied here, more than an instruction to trial courts to "make their [§1385] rulings clear" so that reviewing courts may later determine whether such dismissals were, in fact, related to guilt or innocence. *Ibid.* The trial court's 1996 dismissal predated *Hatch* by four years, so to the extent that *Hatch* imposed such a clear-statement rule, the trial court would not have been aware of it.

All that said, Woodward's assertion that *Hatch* conflicts with this Court's double jeopardy precedents was not presented to the Court of Appeal before it issued the opinion on review. It was not until he filed his petition for review

in the California Supreme Court that Woodward pressed this point. Woodward is hardly to blame for that litigation choice, as *Hatch* itself left open the question whether a dismissal order that (like his) included the phrase "insufficient evidence" sufficed to establish "that the dismissal was equivalent to an acquittal." *Id.,* at 276, 991 P. 2d, at 176. The California Supreme Court should assess, in the first instance, how to reconcile *Hatch* with this Court's intervening decisions in *McElrath* and *Evans*, among others. For that reason, I concur in the Court's denial of certiorari and encourage the California Supreme Court to address this question.